UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TRACY MCCARTER,

        PLAINTIFF,

        - AGAINST -

THE CITY OF NEW YORK, OFFICER
SAMANTHA CORTEZ, OFFICER SHAHEL
MIAH, DETECTIVE ALEXANDER CRUZ,
SERGEANT JORGE AGUILA,

        DEFENDANTS.

23 Civ. 9652 (GHW)(KHP)

## PLAINTIFF'S OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT & RECOMMENDATION GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

ZMO Law PLLC
353 Lexington Avenue, Suite 900
New York, NY 10016
(212) 685-0999
tc@zmolaw.com
*ATTORNEYS FOR PLAINTIFF TRACY MCCARTER*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................................1

PRELIMINARY STATEMENT ........................................................................................3

FACTUAL BACKGROUND .............................................................................................4

PROCEDURAL HISTORY ...............................................................................................7

STANDARD OF REVIEW ................................................................................................8

ARGUMENT......................................................................................................................9

   I.    THE R&R ERRED BY MISSTATING THE DATE MS. MCCARTER
        WAS RELEASED FROM RIKERS ISLAND AND FAILING TO
        RECOGNIZE THAT ELECTRONIC MONITORING AND
        RESTRICTION ON MOVEMENT CONSTITUTE DEPRIVATIONS OF
        LIBERTY........................................................................................................9

  II.   THE R&R ERRED IN HOLDING THAT NO REASONABLE JURY
        COULD FIND THAT P.O. CORTEZ'S FABRICATION CAUSED MS.
        MCCARTER TO BE HELD IN JAIL LONGER, FORCED TO SUBMIT
        TO ELECTRONIC MONITORING, AND RESTRICTED FROM
        TRAVELING.................................................................................................13

 III.  THE R&R ERRED IN HOLDING THAT NO REASONABLE JURY
        COULD FIND THAT MS. MCCARTER SUFFERED EXCESSIVE
        PRETRIAL DETENTION DUE TO P.O. CORTEZ'S FABRICATION..17

CONCLUSION .................................................................................................21

## TABLE OF AUTHORITIES

### Cases

*Adams v. N.Y. State Dep't of Educ.*, 855 F.Supp.2d 205 (S.D.N.Y. Apr. 10, 2012) ..... 9

*Anilao v. Spota,* 340 F.Supp.3d 224 (E.D.N.Y. Nov. 28, 2018) ................................... 17

*Catania v. United Fed'n of Tchrs.*, 2022 WL 767107 (S.D.N.Y. Mar. 12, 2022) .......... 8

*Collins v. City of New York*, 2019 WL 1413999 (S.D.N.Y. Mar. 29, 2019) ................. 17

*Corso v. City of New York*, 2019 WL 1570807 (S.D.N.Y. Apr. 11, 2019) .................... 17

*County of Sacramento v. Lewis*, 523 U.S. 833 (1998) ............................................ 19, 20

*Garnett v. Undercover Officer C0039*, 838 F.3d 265 (2d Cir. 2016) .................. 9, 13, 17

*Hervochon v. Iona College*, 2019 WL 1375359 (S.D.N.Y. Mar. 27, 2019) ................... 8

*Murphy v. Lynn*, 118 F.3d 938 (2nd Cir. 1997) ........................................................ 10

*Nnodimele v. Derienzo*, 2016 WL 337751 (E.D.N.Y. Jan. 27, 2016) .......................... 17

*Paul v. Davis*, 424 U.S. 693 (1976) ....................................................................... 12

*Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123 (2d Cir. 1997) .................................. 14

*Rowell v. City of New York*, 2019 WL 280469 (S.D.N.Y. Jan. 22, 2019) .................... 17

*Russo v. City of Bridgeport*, 479 F.3d 196 (2d Cir. 2007) ......................................... 18

*Smalls v. Collins*, 10 F.4th 117 (2d Cir. 2021) ....................................................... 13

### Statutes

18 U.S.C. § 3142 ................................................................................................... 14

28 U.S.C. § 636 ...................................................................................................... 3

28 U.S.C. § 636(b)(1)(c) .......................................................................................... 8

1

42 U.S.C. § 1983.................................................................................................9, 13

N.Y. C.P.L. § 180.80........................................................................................ 12

N.Y. C.P.L. § 510.10(1) .................................................................................. 14

N.Y. C.P.L. § 510.40(4)(d) ........................................................................ 12, 18

## Rules

Fed. R. Civ. P. 72(b) ...................................................................................... 3, 9

Fed. R. Civ. P. 72(b) (advisory committee notes) ......................................... 8

Fed. R. Civ. P. 72(b)(3)................................................................................... 8

## Constitutional Provisions

U.S. Const. amend. IV ................................................................................... 10

U.S. Const. amend. V...................................................................................... 13

U.S. Const. amend. XIV............................................................................ 12, 13

## PRELIMINARY STATEMENT

Plaintiff respectfully submits the following objections pursuant to 28 U.S.C. § 636 and Fed. R. Civ. P. 72(b) to the January 6, 2026 report and recommendation submitted by Magistrate Judge Katherine H. Parker. ECF No. 93 (hereinafter "R&R"). While we accept the R&R's determinations regarding probable cause, Plaintiff respectfully submits that the magistrate judge erred in recommending dismissal of Count VI (denial of due process and fair trial due to the fabrication of evidence) and Count VIII (excessive pretrial detention) against defendant Police Officer Samantha Cortez ("P.O. Cortez").

The magistrate judge's decision was based in part on factual errors, most crucially her mistaken belief that Ms. McCarter was released from pretrial custody on Rikers Island after two and a half months, when in fact Ms. McCarter was held for more than six months. Furthermore, the R&R contained flawed legal analysis relating to the fabrication-of-evidence count because it (1) failed to recognize that the restrictions on movement imposed on Ms. McCarter after her release constituted a deprivation of liberty and (2) found as a matter of law that the fabrication did not cause Ms. McCarter's deprivation of liberty, when that was an issue of fact for the jury.

In addition, the magistrate judge's legal analysis was flawed in recommending dismissal of the excessive pretrial detention claim because (1) the fabrication of evidence at issue here "shocks the conscience" and (2) a reasonable juror could conclude that Ms. McCarter's pretrial detention resulted from the fabrication of evidence.

3

In short, a reasonable juror could find that the restriction of Ms. McCarter's liberty and her excessive pretrial detention were the result of P.O. Cortez's fabricated evidence—her repeated false claim that Ms. McCarter admitted to stabbing her husband in the chest after he tried to take her purse.

## FACTUAL BACKGROUND

On March 2, 2020, after escaping a chokehold, Plaintiff Tracy McCarter grabbed a knife to defend herself from a violent attack by her estranged husband, James Murray. Pl. Ex. 2: 2023 Plaintiff Deposition at 59:15-61:24.[1] Tragically, as Mr. Murray lunged at her, he slipped and fell forward onto the knife she held out in front of her, resulting in a fatal wound. *Id.* at 61:19-24. Ms. McCarter immediately began stanching the wound by putting pressure on it and calling for help. *Id.* at 62:17-63:5. Before the police arrived, Ms. McCarter made several statements to both a 911 operator and her neighbor, all of which were recorded on the 911 call. Def. Stmt. Facts ¶ 2-7;[2] Def. Ex. A: 911 Call; Def. Ex. B: Transcript of 911 Call.

In the recorded conversations, Ms. McCarter stated, among other things: "I stabbed my husband on accident"; "[m]y ex-husband came drunk and attacked me, he tried to take my money"; "I stabbed him trying to protect myself"; "No, I didn't

---

[1] Exhibits labeled "Pl. Ex." are attached to the August 1, 2025, declaration of Tess Cohen filed in support of Plaintiff's opposition to defendants' motion for summary judgment. ECF No. 86. Exhibits labeled "Def. Ex." are attached to the June 13, 2025, declaration of Brian Francolla filed in support of defendants' motion for summary judgment. ECF No. 79.

[2] Citations to "Def. Stmt. Facts" refer to the June 13, 2025, Defendant's Statement of Undisputed Facts Pursuant to Local Rule 56.1. ECF No. 80. Citations to "Pl. Stmt. Facts" refer to the August 1, 2025, Plaintiff Response to Defendants' Statement of Undisputed Facts Pursuant to Local Civil Rule 56.1. ECF No. 87.

4

attack him. He was coming at me."; "[h]e got stabbed with it [the knife]. He got stabbed with it." *Id*. At no time did Ms. McCarter flatly state she stabbed Mr. Murray, nor was any police officer present during the 911 call.[3]

However, when police arrived, rather than provide help, they exacerbated Ms. McCarter's trauma and hastened Mr. Murray's death. They pulled Ms. McCarter off her husband and performed CPR, which made blood gush from the wound. Pl. Stmt. Facts ¶¶ 17, 20; Pl. Ex. 2: 2023 Plaintiff Deposition at 64:23, 71:4-10, 72:1-74:2.

In front of P.O. Cortez, Ms. McCarter tried to explain what happened to her, telling officers, "[h]e started trying to take my money, he said just give me money and I was not giving him my money, and he pushed me we went into the glass and I thought the glass was gonna fall he was fighting me I don't understand I was screaming for help, you can ask my neighbor." Def. Stmt. of Facts ¶ 32; Def. Ex. H: Officer Miah Body Cam at 21:12:49-21:13:21. As she was talking, defendant Officer Shahel Miah ("P.O. Miah") handcuffed Ms. McCarter on the order of defendant Sgt. Jorge Aguila and hushed her. Pl. Stmt. of Facts ¶ 32-35.

Sgt. Aguila, the supervising officer, asked P.O. Cortez what Ms. McCarter said. Def. Ex. J: Sgt. Aguila Body Cam at 21:14:20-21:14:29. Rather than state the truth—

---

[3] In his initial interview with police, Ms. McCarter's neighbor Will Vaultz was asked by police, "What did [Ms. McCarter] say to you at the time?" Mr. Vaultz stated, "[s]he says she—he he attacked her," which is consistent with the recording of their conversation. Def. Ex. 23: Yaguchi Body Cam at 02:22:47-02:22:54. By the time of the grand jury, he testified that Ms. McCarter stated, "I stabbed him." Pl. Stmt of Facts ¶ 146-7. This testimony is contradicted by the recording of their entire conversation, which shows how Mr. Vaultz' testimony changed to conform with the false statements of defendant Cortez. Def. Stmt. Facts ¶ 2-7; Def. Ex. A: 911 Call; Def. Ex. B: Transcript of 911 Call.

that Ms. McCarter made a nuanced statement reflecting a complicated situation—P.O. Cortez stated *her own* theory of what occurred, and attributed it to Ms. McCarter, falsely telling her supervisor, only minutes after her own arrival, that Ms. McCarter "said he tried to take my money and she stabbed him in the chest." Def. Stmt. of Facts ¶ 44. The magistrate judge correctly noted that Judge Kiesel, in dismissing the criminal case against Ms. McCarter, opined that Ms. McCarter did not correct the false statement at the scene. ECF No. 93 at 12-13 *citing* ECF No. 87 ¶ 215. However, Judge Kiesel was mistaken regarding that factual point: on P.O. Miah's body camera footage at the scene, a male officer can be heard saying something like, "she stabbed him in the chest," and Ms. McCarter stated, "No, he keeps saying that. I did not. I did not." Def. Ex. H at 21:25:10-21:25:18.

P.O. Cortez did not clarify the statement once the immediate stress of the situation ended. Instead, she reiterated and repeated the false account in NYPD paperwork, to the investigating officer, to the prosecutor, to judges, and to the grand jury. The prosecutor on the case repeatedly relied on this false summary of Ms. McCarter's statement, including it in numerous search warrant applications granted by the same judge who decided many of Ms. McCarter's bail arguments, the Hon. Melissa Jackson of New York County Supreme Court. P.O. Cortez's false account and paperwork caused Judge Jackson to believe, falsely, that Ms. McCarter had stated, "[H]e tried to take my purse and I stabbed him in the chest."[4]

---

[4] The numerous times this evidence fabricated by defendant Cortez was used against Ms. McCarter is detailed in §§ IV, VI and VII of the Facts portion of

P.O. Cortez's false account shaped the case against Ms. McCarter over the next thirty-three months. It stripped the situation of its complexity—what occurred was a mix of self-defense and accident involving a violent, abusive domestic partner—removing Ms. McCarter's exculpatory words describing a drunken attack by her husband and replacing them with a devastating confession asserting that Ms. McCarter had not only purposefully stabbed her husband, but had done it *because* he tried to take her purse. This false evidence resulted in Ms. McCarter being held at Rikers Island for more than six months and, even after her release from Rikers, her liberty was restricted via electronic monitoring for the remainder of the nearly three years she was prosecuted.

## PROCEDURAL HISTORY

Ms. McCarter sued P.O. Cortez and the other police at the scene. She alleged various civil rights violations including fabrication of evidence and unwarranted extended pretrial detention. *See* Amended Complaint, ECF No. 56. Defendants filed a motion for summary judgment, ECF Nos. 77 – 78, and statement of undisputed facts, ECF No. 80, on June 13, 2025. The motion requested dismissal of the entire complaint against all defendants. Ms. McCarter filed her opposition to the motion for summary judgment, ECF No. 88, and plaintiff's response to defendants' statements of undisputed facts, ECF No. 87, on August 1, 2025. Defendants filed a reply in further support of the motion on August 15, 2025. ECF No. 91. On January 6, 2025,

---

Plaintiff's Opposition to Defendant's Motion for Summary Judgment. ECF No. 88 at 11-19.

Judge Parker issued the R&R, which recommended dismissal of Ms. McCarter's complaint in its entirety. ECF No. 93.

As discussed below, the magistrate judge's recommendation to dismiss Counts VI and VIII of the Amended Complaint is based on both factual and legal errors. We therefore respectfully request that the Court reject it. A jury should be allowed to determine whether P.O. Cortez's fabricated evidence restricted Ms. McCarter's liberty and led to excessive pretrial detention.

## STANDARD OF REVIEW

Where, as here, objections are timely filed to a magistrate judge's R&R, a district court must review *de novo* those portions of the report to which objections are made, and may accept, reject, or modify the findings or recommendations made by the magistrate judge, receive further evidence, or return the matter to the magistrate judge with instructions. Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(c). *See also Catania v. United Fed'n of Tchrs.*, 2022 WL 767107 at *1 (S.D.N.Y. Mar. 12, 2022) (Woods, J.) (rejecting a R&R for, *inter alia*, improperly relying on federal law).

Even where there are no specific objections to sections of the R&R, a district court must "satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Fed. R. Civ. P. 72(b) (advisory committee notes). *See also Hervochon v. Iona College*, 2019 WL 1375359 at *1 (S.D.N.Y. Mar. 27, 2019) ("The district court 'may adopt those portions of the report to which no "specific, written objection" is made, as long as the factual and legal bases supporting the findings and conclusions set forth in those sections are not clearly erroneous or contrary to law,'"

8

*citing Adams v. N.Y. State Dep't of Educ.*, 855 F.Supp.2d 205, 206 (S.D.N.Y. Apr. 10, 2012), *quoting* Fed. R. Civ. P. 72(b)).

## ARGUMENT

As discussed below, the R&R misapprehends both the facts and the law by mistaking when Ms. McCarter was released from pretrial detention, failing to adequately consider the deprivation of liberty Ms. McCarter suffered by being forced onto electronic monitoring with restrictions on her movement, supplanting the role of the jury in determining the causal effect of the fabrication on the state courts and prosecutors, and failing to acknowledge that a jury could find that P.O. Cortez's egregious, repeated lies about what Ms. McCarter said after the incident were so grave as to shock the conscience.

**I.    The R&R erred by misstating the date Ms. McCarter was released from Rikers Island and failing to recognize that electronic monitoring and restriction on movement constitute deprivations of liberty.**

To state a 1983 claim for fabrication of evidence in the Second Circuit, a Plaintiff need only show that "the plaintiff suffer[ed] a deprivation of life, liberty, or property as a result" of the fabricated evidence. *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 279 (2d Cir. 2016). In this case, the R&R did "not analyze whether evidence was fabricated or material, because McCarter has failed to show a dispute of fact that any alleged fabrication deprived her of life, liberty, or property." ECF No. 93 at 30. We respectfully submit that this legal conclusion—that P.O. Cortez's false statements did not, *as a matter of law*, result in *any* deprivation of liberty or

property—is incorrect and reflects a misunderstanding of both the law and the record before the Court.

A "deprivation of life, liberty, or property" is broader than incarceration—it can exist even absent pretrial detention under both New York and constitutional law. In the context of the Fourth Amendment, the Second Circuit has explained that "[t]he liberty deprivations regulated by the Fourth Amendment are not limited to physical detention." *Murphy v. Lynn*, 118 F.3d 938, 945 (2nd Cir. 1997) (finding a person "seized" under the definition of the Fourth Amendment where they were not allowed to travel out-of-state and were required to appear in court multiple times after arraignment).

Here, the magistrate judge misunderstood both the extent of the liberty interest and the degree to which the prosecution and courts relied on P.O. Cortez's fabrication to deprive Ms. McCarter of that interest. As a factual matter, the magistrate judge incorrectly stated that Ms. McCarter was released from Rikers Island on May 21, 2020. ECF No. 93 at 31. This assertion was clear error: Ms. McCarter was not released from Rikers Island until *after* September 16, 2020, when she was finally granted bail after the People, for months, relied on P.O. Cortez's fabrication to keep her locked away at Rikers. *See* Pl. Ex. 22: September 16, 2020 Bail Hearing at 4:15-19. We respectfully submit that a jury could easily find on this record that Ms. McCarter's continued confinement—from her arrest on March 2 to her release after September 16—was due to P.O. Cortez's fabricated evidence which, as elaborated in our summary judgment opposition, was continuously relied upon by the

10

People and the court. *See, e.g.*, Pl. Ex. 18: April 30, 2020 Bail Hearing at 27:14-16, 30:6-9 (bail denied after People rely on Ms. McCarter's alleged statements to "the police officer" that she killed the complainant because he "tried to take my money" and bail judge states that remand is necessary because she was charged with intentional murder, not manslaughter).[5]

Moreover, the restrictions on Ms. McCarter's liberty did not end with her release from Rikers Island. Ms. McCarter was released on pretrial supervision with electronic monitoring—*i.e.* she was forced to wear an electronic ankle bracelet as a result of P.O. Cortez's fabricated evidence. While on electronic monitoring, Ms. McCarter was only permitted to leave her home a few hours per week. *See* Pl. Ex. 22: September 16, 2020 Bail Hearing at 4:15-24.[6] Federal courts often look to state law

---

[5] The manner in which P.O. Cortez's fabrication directly caused Ms. McCarter's continued unlawful confinement is detailed in §§ III and IV of the Argument portion of Plaintiff's Opposition to Defendant's Motion for Summary Judgment. ECF No. 88 at 27-33.

[6] Though not detailed in the record before the Court here, the full record and the trial evidence relating to damages will show that Ms. McCarter's restrictions while on electronic monitoring varied over time after her release. Neither party focused on the nuances of the electronic monitoring—from the Plaintiff's view this was because *any* electronic monitoring even without further restrictions was, in and of itself, a deprivation of liberty. The defendants did not argue otherwise.

As reflected in the various transcripts which were exchanged during discovery between the parties, Ms. McCarter was allowed to leave her home more often as time went on— a gradual process that took months. However, she was still confined to the five boroughs. As a result, Ms. McCarter was not allowed to leave the state for desperately needed inpatient care at the only facility suitable for her needs that her insurance covered, nor was she allowed to attend the funeral of loved ones or witness the births of her first two grandchildren. A separate property loss also occurred; Ms. McCarter received a job offer on Long Island that she was not allowed to accept because it was outside the confines of the five boroughs.

in determining whether a liberty interest arises under the Fourteenth Amendment's due process clause and New York State law specifically treats electronic monitoring as a serious deprivation of liberty. *See Paul v. Davis*, 424 U.S. 693, 710-711 (1976) ("the procedural guarantees of the Fourteenth Amendment apply whenever the State seeks to remove or significantly alter" interests "within the meaning of either 'liberty' or 'property' as meant in the Due Process Clause"). In New York State, "[a] defendant subject to electronic location monitoring . . . shall be considered held or confined in custody for purposes of section 180.80 of this chapter." N.Y. C.P.L. § 510.40(4)(d). For someone charged with a felony to be subjected to electronic location monitoring for more than 120 hours[7] after arrest, a grand jury must vote to indict the defendant, or a judge must find probable cause after a preliminary hearing. N.Y. C.P.L. § 180.80. Thus, under New York law, electronic location monitoring alone—even without the additional restrictions imposed on Ms. McCarter who was effectively on home confinement for months—is a deprivation of liberty, protected under the due process clause of the Fourteenth Amendment.

Thus, the magistrate judge erred *at least* in limiting her analysis of the potential deprivation of Ms. McCarter's liberty as a result of P.O. Cortez's fabrication from the time from her arrest to May 21, 2020, as a factual matter, and to her period of pretrial detention, as a legal matter. Ms. McCarter was deprived of liberty until the indictment against her was dismissed on December 2, 2022, and she was, at long

---

[7] Or 144 hours in the case of an intervening holiday or Sunday. N.Y. C.P.L. § 180.80.

last, allowed to remove the monitor shackling her ankle, receive inpatient mental health treatment, see her loved ones, and live a life unconstrained by the criminal prosecution.

## II.    The R&R erred in holding that no reasonable jury could find that P.O. Cortez's fabrication caused Ms. McCarter to be held in jail longer, forced to submit to electronic monitoring, and restricted from traveling.

The magistrate judge's analysis of the fabrication of evidence claim implicitly relied on a premise that has been rejected by the Second Circuit: that a probable cause finding precludes a claim for damages arising from an officer's fabrication. "[A] Section 1983 claim for the denial of a right to a fair trial based on an officer's provision of false information to prosecutors can stand even if the officer had probable cause to arrest the Section 1983 plaintiff." *Garnett v. Undercover Officer C0039,* 838 F.3d 265, 277-278 (2d Cir. 2016). "A section 1983 fair-trial claim . . . *will not be defeated by evidence of probable cause* because it 'cover[s] kinds of police misconduct not addressed by … malicious prosecution claims' and vindicates a different constitutional right – the right to due process protected by the Fifth and Fourteenth Amendments." *Smalls v. Collins*, 10 F.4th 117, 133 (2d Cir. 2021) (emphasis added), *quoting Garnett v. Undercover Officer C0039*, 838 F.3d 265, 278 (2d Cir. 2016). "No arrest, no matter how lawful or objectively reasonable, gives an arresting officer or his fellow officers license to deliberately manufacture false evidence against an arrestee. To hold that police officers, having lawfully arrested a suspect, are then free to fabricate false confessions at will, would make a mockery of the notion that

13

Americans enjoy the protection of due process of the law and fundamental justice."
*Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997).

Despite this clear case law, the magistrate judge wrote that "probable cause supporting McCarter's arrest and murder charge was overwhelming even absent Cortez's statement, so some level of detention was *certainly* justified." ECF No. 93 at 30 (emphasis added). But the existence of probable cause does not give the police license to fabricate evidence against the defendant. Probable cause does not absolve an officer of the consequences of fabricating evidence; moreover that "some level" of detention was, according to the magistrate judge, "certainly justified,"[8] does not mean that the level of detention Ms. McCarter experienced was not the result of P.O. Cortez's fabrication.

The magistrate judge failed to consider the facts in the light most favorable to the Plaintiff in concluding no reasonable juror could find that Ms. McCarter suffered a deprivation of liberty as a result of P.O. Cortez's fabrication. The magistrate judge claimed that, at the arraignment, "the prosecution made only passing reference to the fact that McCarter 'admit[ted] to stabbing the complainant,'" ECF No. 93 at 30, *quoting* ECF No. 79-10 at 3:8-4:1. But the arraignment judge also had before her the

---

[8] This analysis also seemed to conflate federal bail rules with New York state release requirements. Under federal law, judges are allowed to consider danger to the public and there is a presumption of pretrial detention for crimes such as murder. 18 U.S.C. § 3142. Under New York law, by contrast, judges may not consider dangerousness, and are required to "make an individualized determination as to whether the principal poses a risk of flight to avoid prosecution, consider the kind and degree of control or restriction necessary to reasonably assure the principal's return to court, and select a securing order consistent with its determination . . . ." N.Y. C.P.L. § 510.10(1).

14

criminal court complaint, which stated, "I am informed by Officer Cortez that the defendant stated in substance, 'I stabbed him in the chest.'" Def. Ex. W: Criminal Court Complaint. This false characterization is in stark contrast to the actual statements Ms. McCarter made outside of P.O. Cortez's presence on the recorded 911 call ("I stabbed my husband on accident"; "I stabbed him trying to protect myself"; "[h]e got stabbed with it"). Cortez's account of the statement in the criminal court complaint also omits any of the statements Ms. McCarter actually made in the presence of P.O. Cortez—as P.O. Cortez herself *admitted* during her deposition. Def. Stmt. Facts ¶ 2-7; Def. Ex. A: 911 Call; Def. Ex. B: Transcript of 911 Call; Pl. Ex. 10: Deposition of Officer Cortez at 56:24-57:1. A reasonable juror could determine P.O. Cortez's statement in the criminal court complaint impacted the Court's decision at arraignment. No court can reasonably say, *as a matter of law*, that it did not.

A reasonable juror could similarly find that P.O. Cortez's false statement could have influenced the numerous other judges who made decisions relating to Ms. McCarter's liberty. For example, Judge Jackson—who presided over numerous bail applications by Ms. McCarter both before and after she was released on electronic monitoring—signed multiple warrants based on upon P.O. Cortez's fabricated statement. *See, e.g.,* Pl. Exs. 15, 16, 17, 19, 20, 27 (search or seizure orders signed by Judge Jackson between March 10, 2020 and October 6, 2020 either containing the fabricated statement or incorporating exhibits that do); Pl. Ex. 21 (transcript of bail hearing presided over by Judge Jackson in which bail was denied and remand

15

continued, which occurred the same day Judge Jackson signed a seizure order, Pl. Ex. 20, containing the fabricated statement).

P.O. Cortez also testified falsely at the preliminary hearing (omitting that Ms. McCarter had stated Mr. Murray was fighting her) and at the grand jury (testifying that Ms. McCarter was "screaming I stabbed him."). Def. Ex. Q: Preliminary Hearing Transcript; Def. Ex. R: Grand Jury Transcript at 14:7-8.

By finding that no reasonable juror could find that the fabricated evidence deprived Ms. McCarter of a liberty right when the fabricated evidence was repeatedly before judges deciding whether Ms. McCarter should be allowed to leave Rikers, to leave her home when she wished, and to leave New York City for medical treatment, the R&R suggests an unmeetable standard. It is a rare plaintiff who can show more than the fact that the fabricated evidence was repeatedly before the judges determining a plaintiff's detention status. Unless the federal court system intends to allow plaintiffs to routinely depose judges to determine what would have influenced their decision, the determination of whether a fact before the judge influenced a deciding judge must be an objective determination of causation made by a jury.

The element focused on by the magistrate judge—that a deprivation of liberty or property resulted from the fabricated evidence—is a question of causation and damages—a question whose resolution is not mandated as a matter of law, but rather a fact-intensive analysis that should be left to the finder of fact. There is ample evidence in the record for a reasonable juror to find that the fabricated evidence repeatedly placed before the judges making determinations on the extent of Ms. McCarter's liberty impacted those decisions. *See e.g. Rowell v. City of New York*, 2019

16

WL 280469 at *3 (S.D.N.Y. Jan. 22, 2019) (Nathan, J.) (denying summary judgment where "[a] jury could also find that the [allegedly fabricated] evidence before Judge DiBiase influenced her sense of the strength of the case and therefore the bail she set . . . .").[9] It is well-established in districts across the Second Circuit that "a break in the chain of causation is a question for the jury." *Anilao v. Spota*, 340 F.Supp.3d 224, 262 (E.D.N.Y. Nov. 28, 2018) (Bianco, J.); *see also Collins v. City of New York*, 2019 WL 1413999 at *3 (S.D.N.Y. Mar. 29, 2019) (Nathan, J.) (finding genuine issue of material fact as to the proximate cause between the fabricated evidence and the loss of liberty based upon inclusion of fabricated evidence in the district attorney's datasheet and the lenient offers make by the prosecutors); *Corso v. City of New York*, 2019 WL 1570807 (S.D.N.Y. Apr. 11, 2019); *Nnodimele v. Derienzo*, 2016 WL 337751 (E.D.N.Y. Jan. 27, 2016).

III.    **The R&R erred in holding that no reasonable jury could find that Ms. McCarter suffered excessive pretrial detention due to P.O. Cortez's fabrication.**

The R&R makes similar errors in its analysis of Ms. McCarter's separate claim of excessive pretrial detention. The magistrate judge again incorrectly asserts that Ms. McCarter was only held for two and a half months when she was, in fact, held for more than 6 months. Moreover, under New York Law, "pretrial detention" extends to Ms. McCarter's time on electronic monitoring, as discussed above, since New York

---

[9] Moreover, the Second Circuit has upheld a finding of nominal and punitive damages on a fabrication claim even where the jury found defendants not liable on false arrest and malicious prosecution claims. *See Garnett v. Undercover Officer 0034*, 838 F.3d 265 (2d Cir. 2016). This suggests that the damages on a fabrication claim are still cognizable even when only nominal and no other claim survives.

considers Ms. McCarter to have been "in custody" during her time on electronic monitoring. N.Y. C.P.L. § 510.40(4)(d).

The magistrate judge asserts as a matter of law that no jury could contradict, that Ms. McCarter being "detained for approximately three months . . . was reasonable given the weight of the evidence and the gravity of the charges." ECF No. 93 at 37. However, the legal question is not whether objectively when charged with murder a defendant can reasonably be held for three months, but whether the plaintiff "[(1)] has a right to be free from continued detention stemming from law enforcement officials' mishandling or suppressing of exculpatory evidence, (2) that the actions of the officers violated that right, and (3) that the officer's conduct shocks the conscience." *Russo v. City of Bridgeport*, 479 F.3d 196, 205 (2d Cir. 2007) (internal citations and quotations omitted). The fact that evidence is fabricated is, in itself, exculpatory. That P.O. Cortez did not correct the record, allowed her false statement to stand, and repeated versions of it, including falsely telling the grand jury that Ms. McCarter was screaming "I stabbed him," constitutes mishandling of exculpatory information. Def. Ex. R: Grand Jury Transcript at 14:7-8

The magistrate judge also claims that none of the behavior attributed to P.O. Cortez "shocks the conscience," but was rather "somewhat careless" as "McCarter made similar statements on the 911 call, to Vaultz, and other statements to officers which would have allowed Cortez to infer (properly) that McCarter conceded she had held the knife that killed Murray and felt responsible for Murray's fate . . . ." ECF No. 93 at 39.

The R&R again ignores what P.O. Cortez actually did. P.O. Cortez surmised from the entirety of the evidence what *P.O. Cortez* believed had occurred and then placed those statements in Ms. McCarter's mouth. To suggest that Ms. McCarter's statements that she "stabbed my husband on accident," "stabbed him trying to protect [her]self," and "[h]e got stabbed with it" is somehow a careless equivalency to the statement that Ms. McCarter said, "he tried to take my purse, and I stabbed him in the chest," is to ignore the legal and factual implications of these statements— implications that judges and prosecutors were well aware of when they locked Ms. McCarter up for over 6 months, confined her to her home, and refused to let her travel to obtain needed medical care. What Ms. McCarter actually confessed to is what happened: she was defending herself and through a mixture of self-defense and accident, Mr. Murray suffered a fatal wound. What P.O. Cortez claimed Ms. McCarter confessed to was a purposeful stabbing of Mr. Murray, in the chest, because he tried to take her purse. That is not "somewhat careless." It is unconscionable malice against a criminal defendant. Alternatively, at a minimum, P.O. Cortez's conduct constituted deliberate indifference which, in this context, is sufficient to shock the conscience. *See e.g. County of Sacramento v. Lewis*, 523 U.S. 833, 848-854 (1998).

When analyzing whether law enforcement activities "shock the conscience" the Supreme Court has focused on the mental state of the one accused of doing harm, noting that those who are "deliberately indifferent" to harm in a context where there is proper time for deliberation can be acting in a manner shocking the conscience, but deliberate indifference is insufficient to shock the conscience during a stressful

19

situation such as a prison riot. *See e.g. County of Sacramento v. Lewis*, 523 U.S. 833, 848-854 (1998). Thus, P.O. Cortez's response to her superior at the scene could arguably be a moment where deliberate indifference would not be a high enough standard to trigger a finding of conscience-shocking behavior. However, her decision to repeat the lie in her paperwork after she had time to review the body camera footage is nothing less than conscience-shocking behavior. Pl. Ex. 10: Deposition of Officer Cortez at 98:2-6.

P.O. Cortez substituted Ms. McCarter's actual words with a summary of what P.O. Cortez believed occurred—a false and fabricated confession to intentional murder. She repeated versions of this fabrication under oath at the preliminary hearing—omitting Ms. McCarter's statements indicating a physical confrontation— and again at the grand jury by testifying falsely that Ms. McCarter was screaming "I stabbed him." She was repeatedly given an opportunity to review evidence, and to revise her false statements. A jury could easily find that her failure to do so shocks the conscience.

A jury can also easily find that Ms. McCarter's continued detention "stemmed" from this conscience-shocking behavior. For the same reasons that causation in the context of the fabrication claim is a question for the jury, so too should it be left to a jury for the excessive pretrial detention claim. *See supra* § II. at 13 *et seq*. As such, a jury should be allowed to determine whether P.O. Cortez violated Ms. McCarter's right to be free of excessive pretrial detention.

20

## **CONCLUSION**

For the reasons set forth above, Plaintiff respectfully objects to the Report &

Recommendation and submits that this Court should respectfully reject any

recommendation to dismiss Causes of Action VI and VIII of the amended complaint.

Dated:      January 20, 2026
          New York, New York


Respectfully submitted,
ZMO Law PLLC

By:    /s/ Tess Cohen
      Tess Cohen
      Zachary Margulis-Ohnuma
      Shane Finn
      353 Lexington Avenue, Suite 900
      New York, NY 10016
      (212) 685-0999